## JOSEPH F. LINDSAY, Appellant, v. SAMUEL A. BATES.

### Division Two, November 23, 1909.

1. **MALICIOUS PROSECUTION: Plaintiff's Guilt: Probable Cause.** In a suit for civil damages for malicious prosecution, the issue is not whether plaintiff was guilty of the offense charged in the information which was based on defendant's affidavit, but the issue is, Did defendant have probable cause for commencing said prosecution?

2. ———: **Probable Cause: Information Founded on Facts.** An instruction, in a suit for malicious prosecution, advising the jury, that. "information that would justify the making of a criminal complaint against another, for the purpose of having him arrested, must be of such character and obtained from such sources, that men, generally, of ordinary care, prudence and discretion would feel authorized to act upon it under similar circumstances," is not erroneous. The law does not require that the prosecuting witness must know of his own knowledge all the facts upon which such prosecution must rest.

3. ———: ———: **Evidence: Question for Jury.** Defendant filed an affidavit charging plaintiff with arson, and the prosecuting attorney based an information thereon, and the case was dismissed before trial, and plaintiff brought this suit for malicious prosecution. Defendant testified that he was the owner of the house that was burned; that he himself had been charged with burning the house along with one Berryman, but the charge was dismissed; that he then began to investigate, and received information that led him to believe it was burned by an incendiary; that he found plaintiff had a printing outfit in said building, which was insured for $300, and that plaintiff had collected the insurance, and a witness told him plaintiff had purchased the outfit from a woman for fifty dollars. He also produced evidence to the effect that plaintiff's reputation for honesty and integrity was bad; that plaintiff was seen on the evening of the fire talking to Berryman, whose reputation for honesty, integrity and property-burning was very bad; that soon afterwards Berryman was seen to give Morris some money and heard to say, "Give it to Daniels, and he will know what it is for," and these facts were made known to defendant; that he was told by Ballard that Mell had seen plaintiff go towards defendant's building with shavings and an oil can, about ten minutes before the fire broke out, and defendant testified that Mell told him the same story. *Held*, that, if these facts were true, the court cannot say, as a matter of law,

that an ordinarily reasonable and cautious man would not have said that plaintiff burned the house, and whether or not they were true was a matter for the jury to determine, and their verdict for defendant is justified by the evidence.

4. ⸻: ⸻: ⸻: Incompetent Hearsay: Irrelevant. Berryman testified by deposition that defendant, in the suit for malicious prosecution, offered to satisfy two debts amounting to fifty dollars and to pay him fifty dollars cash, if lightning would strike the building which defendant by affidavit charged plaintiff burned; that he, witness, told one Daniels that defendant would pay money to have the building burned, and that Daniels, a few days after the fire, being drunk, told witness he had burned it. *Held*, first, that the alleged statement of Daniels was wholly incompetent as hearsay; and, *second*, the statement of Berryman as to what occurred between him and defendant, was utterly irrelevant to any issue on trial, and was properly excluded.

5. IMPEACHMENT: Of Excluded Witness. The impeachment of a witness, all of whose testimony was properly excluded, was not hurtful to appellant.

6. ⸻: Reputation Prior to Three Years. Where a witness for three years prior to testifying had no established residence, and resided in no place long enough to establish a reputation, it is proper to show that his reputation was bad in the community where he had resided all his life prior to such time.

Appeal from Wayne Circuit Court.—*Hon. Jos. J. Williams,* Judge.

AFFIRMED.

*Ernest A. Green* and *James F. Green* for appellant.

(1) There was no evidence showing any justification for the prosecution of plaintiff. Malice and want of probable cause were both proved. The judgment, therefore, should not be permitted to stand. Stubbs v. Mulholland, 168 Mo. 47; Carp v. Insurance Co., 203 Mo. 295; Bucher v. Hoffman, 99 Mo. App. 250; McGarry v. Railroad, 36 Mo. App. 347; Eagleton v. Kubick, 66 Mo. App. 231. (2) Any evidence tending to prove that Bates knew plaintiff was not guilty of

the charge made against him was admissible on the issue of want of probable cause, and for this reason error was committed in excluding the deposition of Berryman. Elliott on Ev., secs. 2476-2478. And the whole deposition should not have been excluded upon a general objection, if the testimony was admissible for any purpose. Stark v. Knapp, 160 Mo. 553; Chaffee v. Railroad, 64 Mo. 193; Wibracht v. Adams, 89 Mo. App. 370. (3) The court erred in admitting impeaching testimony as to the character of Berryman. Such testimony should be confined to the time the witness testified and not to a prior time. Wood v. Matthews, 73 Mo. 482; State v. Parker, 96 Mo. 390; State v. Summar, 143 Mo. 231; Greenleaf on Ev., sec. 459; State v. Shouse, 188 Mo. 478; De Arman v. Taggart, 65 Mo. App. 86. (4) Defendant's instruction 2 is erroneous in declaring that "information" received by defendant was sufficient to justify his action. It is knowledge of the existence of facts which will authorize the institution of a criminal proceeding and not mere rumor. Van Sickle v. Brown, 68 Mo. 627; Stubbs v. Mulholland, 168 Mo. 47; Sharp v. Johnston, 76 Mo. 660; Bucher v. Hoffman, 99 Mo. App. 250. (5) The instruction is also in conflict with instruction 2 for plaintiff.

*J. B. Daniel* for respondent.

(1) This case having been tried by a jury this court will not set aside their verdict on the ground that it is against the weight of the evidence, there being evidence to support the verdict. Garneau v. Hertel, 15 Mo. 191; Zimmerman v. Owens, 24 Mo. 97; Thompson v. Russell, 30 Mo. 498; Holden v. Vaughan, 64 Mo. 589; Conrad v. Railroad, 116 Mo. App. 517; Levels v. Railroad, 196 Mo. 606; Little v. Pump Co., 122 Mo. App. 620. (2) Where plaintiff submits evidence to sustain his burden of proof, the defendant, even if he offers nothing to contradict it, is entitled to have the jury determine its credibility, and an ap-

pellate court will not review their verdict. Schroeder v. Railroad, 108 Mo. 322. (3) Even if it was error to reject any part of the deposition of Berryman, it was not prejudicial, he having been completely impeached. State v. Francis, 199 Mo. 671. (4) The testimony impeaching Berryman was not incompetent by reason of the fact that the witnesses did not testify as to his reputation where he lived at the time his testimony was taken, for the rule is that such testimony should be as to the reputation of the witness where he is best known, and under the testimony it clearly appears that Berryman was best known in Wayne county, Missouri, where he had resided practically all of his life, and that he had resided in Nacogdoches county, Texas, "four months." 1 Greenleaf on Evidence, sec. 461. (5) The court correctly declared the law in defendant's instruction 2 and that instruction is not inconsistent with the instruction 2 given for plaintiff. The gist of the action is: 1. Did the defendant, now respondent, believe the appellant guilty? 2. Did he have reasonable grounds for so believing? That reasonable and probable cause which will relieve a prosecutor from liability is a belief by him in the guilt of the accused, based upon circumstances sufficiently strong to induce such belief in the mind of a reasonable and cautious man. Vansickle v. Brown, 68 Mo. 635; Hill v. Palm, 38 Mo. 23; Brennan v. Tracy, 2 Mo. App. 540; Kelley v. Osborn, 86 Mo. App. 239; Butcher v. Hoffman, 99 Mo. App. 239. (6) The dismissal of the prosecution against appellant, being made against the objections of respondent, is no evidence of want of probable cause. Roeger v. Langenberg, 97 Mo. 390. And there was ample evidence of probable cause in this case.

FOX, J.—This action was commenced in the circuit court of Wayne county to recover damages for malicious prosecution.

The amended petition on which the case was tried alleged that the defendant on the 13th day of October, 1904, appeared before the clerk of the circuit court of said county and maliciously and without probable cause charged the plaintiff with the commission of the crime of arson, filing an affidavit charging him with the felonious burning of a certain frame building situated on lot seven in block twelve in the city of Piedmont.

It is further alleged that the information was thereupon filed by the prosecuting attorney, based on said affidavit, and a warrant issued thereon by the clerk, and plaintiff, arrested thereunder, gave his bond to appear before the circuit court of said county for trial. It is then alleged that at the February term, 1905, the prosecuting attorney dismissed said prosecution against plaintiff, being advised that the charge contained in the information was without foundation. It was alleged further that plaintiff had incurred expenses to the amount of two hundred dollars in making his defense to the said charge, and he prayed judgment for five thousand dollars, actual damages, and five thousand dollars, punitive damages.

At the return term, the defendant filed his answer, which was a general denial and also an allegation that plaintiff's general reputation for honesty and morality in the community in which he lived was bad. There was a trial by a jury and a verdict and judgment for the defendant from which the plaintiff prosecutes an appeal to this court.

It appears from the evidence that the plaintiff lived at Piedmont in 1903, and had lived there for about twenty years; that he was an attorney at law and president of a bank in the said town. The building which was destroyed in said town was a frame building belonging to the defendant Bates, and was occupied at the time it was burned, October 19, 1901, by one John Berryman. Sometime after the house was

burned, the defendant, Dr. Bates, John Berryman and Ed Daniels were indicted for burning it, but this indictment was subsequently quashed and these parties discharged. Afterwards on the 13th of October, 1904, the defendant made the affidavit referred to in the plaintiff's petition, charging the plaintiff with having burned the said house. The testimony was substantially as follows:

McGhee, the deputy clerk, identified the affidavit filed by the defendant on which the warrant was issued, and also stated that the defendant said that he had a good case against the plaintiff, and if he did not convict him he would leave the State.

R. H. Davis testified that he was prosecuting attorney at the time the information for arson was filed and that he filed the same at the request of the defendant. He stated that he advised the defendant to let the matter alone, but defendant said that the Statute of Limitation was about to run and he must act immediately. Witness told Bates he did not want to file the information because he did not think he could make a case. The warrant issued for plaintiff's arrest, and the bond given by him for bail, together with the judgment discharging him from that charge, were all offered in evidence.

Almon Ing, prosecuting attorney at the time the case was dismissed, testified that he went over the case with the defendant and Mr. Raney, who had been employed to assist in the prosecution, and told Dr. Bates there was not enough testimony to secure a conviction and for that reason he intended to dismiss it and did dismiss it, and that Mr. Raney agreed with him. Witness stated that defendant made the remark that if the case was dismissed, plaintiff would enter suit for malicious prosecution against defendant; that thereupon the prosecuting attorney went to the plaintiff and requested him not to do it; that plaintiff seemed to get mad and would not make any such agree-

ment, but said if defendant would sign a statement that he had lied, he would do it.

Mr. Durham, attorney for plaintiff, stated that it was probable that they would show probable cause. This witness testified that it was his understanding when they quit talking that plaintiff did agree not to bring suit.

Caleb Ballard testified that defendant tried to keep his son John Ballard from being present at the trial of the case against plaintiff; this testimony was denied by the defendant in his evidence, and the testimony of John Ballard shows that he was in Piedmont on the day the prosecution against plaintiff was dismissed.

The deposition of John Berryman was read in evidence. It was taken in Texas, and he was not cross-examined. The witness testified that he lived in Nacogdoches county, Texas, and had lived there four months. He testified that the defendant told him that if lightning struck those buildings he would square the account of witness for thirty dollars, another account of twenty dollars that witness stood good for, and give him fifty dollars besides. He testified further that he told Ed Daniels that Doctor Bates, the defendant, would pay a man to burn the building and that afterwards Daniels told witness that he had burned the building. Daniels was dead at the time of this trial. There is no other evidence that Daniels burned the building and none whatever that defendant ever paid anything to any one in connection with the burning of the building, or that he was ever requested to pay anything to any one for doing so. This evidence was afterwards excluded by the court and the jury were directed not to consider it.

Berryman also testified that he owed respondent about thirty dollars and prior to the burning of the house the defendant pressed him for the payment of

it. The witness was charged jointly with the plaintiff with the arson of the building.

Joseph Lindsay, the plaintiff, testified that he had nothing whatever to do with the burning of the house; that he was in bed asleep when the alarm was sounded; that he never had any conversation with Daniels or Berryman in reference to burning the house. He testified to his arrest in consequence of the complaint against him by defendant, to his payment of attorneys to defend the case, to his objection to having the case dismissed and that he made no agreement with the defendant or any one else in regard to the dismissal of the case and said he would not consent to a dismissal except upon the defendant making a written retraction of what he had sworn to in the affidavit, and that he had nothing whatever to do with the prosetion of the defendant on charge of burning the house. On cross-examination he stated that he let a man by the name of Wilson, who was in the building, have about $200 to buy a printing outfit; that the insurance on this printing outfit was in the name of himself and Wilson. That he made the proof of the claim, collected the insurance and got his part of it. He stated that his purpose for bringing this action was for vindication against these charges. He testified that he tried to get Berryman to attend the court in person, but he refused to come for fear that the defendant would kill him or have him killed.

C. C. Ivy testified to a conversation with the defendant in which the latter told him he had filed a complaint against plaintiff and "would send the d—n rascal over the road," and that plaintiff had indicted him or tried to. He testified that plaintiff's reputation was good as far as he knew. On cross-examination he stated that he heard it discussed and some said it was good and some said it was bad, "they talked both ways."

J. H. Clore testified substantially the same as Ivy. Other witnesses testified that plaintiff's reputation as a business man for honesty and integrity was good.

On the part of the defendant, the defendant testified, denying the statements attributed to him by the witness Caleb Ballard and stated that at the time he filed the affidavit he believed that the plaintiff and Berryman were guilty of arson and that plaintiff had caused defendant to be indicted in order to divert suspicion from himself; that the reputation of plaintiff was very bad, as also was that of Berryman. Defendant was in Cape Girardeau the night the house burned. He moved back to Piedmont the last part of Janury, 1902, and began an investigation as to the fire and he found that it was of incendiary origin by a statement made by Berryman. John Ballard told defendant that Berryman's reputation was bad and he could be hired to do anything for a little money. John Mell told defendant that "he saw a man do that; that he was coming across the hub yard and going between Lee's warehouse and that he got something that looked like an oil can back there, and that was about ten minutes before the fire alarm." That Mell said that it was no one but Joseph Lindsay. The defendant testified that Harry Bates told defendant that he had seen the plaintiff Lindsay and John Berryman together on the evening of the 19th of October, 1901, about three o'clock; that they walked up the street and down the alley towards a calaboose, and plaintiff kept John Berryman there for an hour, and that soon thereafter he (Harry Bates) saw John Berryman call one Ezra Morris and hand him some money with directions to "give it to Ed Daniels and he would know what it was for." He also testified that Wilson told him that he had owned the printing outfit until just before the fire, but that plaintiff had offered him such an inducement that he turned it over to plaintiff, who told him he could use it as long as he wanted to

free of charge. He also testified that one Alberts told plaintiff that he had sold the printing outfit to Wilson for a woman and received fifty dollars in full payment for the same; that on investigation he found that the reputation of John Berryman was very bad; that he had a reputation for burning houses, blacksmith shops; that defendant had been arrested himself charged with burning the same building which plaintiff had been charged with burning. In preparing for his defense most of the evidence given by him was ascertained; that the case against him was dismissed without trial. Several people told him that John Berryman had frequently been seen in consultation with the plaintiff; that prior to and pending this investigation there had been a great number of incendiary fires in Piedmont; that defendant had given to the prosecuting attorney lists of the witnesses and had asked that the matter be investigated by the grand jury, but the witnesses were never called before that body; that the prosecuting attorney, Ing, told defendant that he would dismiss the case against John Berryman so as to get him back to testify against plaintiff, but that was not done. That Ing stated to him that he intended to dismiss the case against plaintiff, but said "I think you have probable cause, but I will not be able to convict;" that Ing further said Mr. Lindsay will not bring a suit if this case is dismissed. Defendant collected insurance on the place that was burned.

Harry Bates testified that he had told defendant that he had seen plaintiff and John Berryman talking together on the evening of the fire, and also told defendant that he had seen John Berryman give Ezra Morris some money the evening the fire occurred and heard him tell Morris to give Ed Daniels the money who would know what to do with it. That plaintiff went to Murphysboro two or three months before the trial of this case and tried to get witness to make certain statements in writing in connection with the case,

which witness refused to do because they were not
correct.

W. P. Toney testified that he had lived in Pied-
mont forty-eight years and had known plaintiff twenty-
years and that plaintiff's reputation for honesty and
integrity was bad, but admitted that he was not on
good terms with him and did not like him.

Dr. G. W. Toney testified plaintiff's reputation for
morality was bad, but admitted that he had a deposit
in the Exchange Bank, and was the family physician
of the family.

A number of witnesses testified that they knew
John Berryman's reputation in the neighborhood of
Piedmont up to the time he lived there in 1901 or
1902 and that his reputation for honesty and integrity
was bad.

In rebuttal the plaintiff offered testimony as fol-
lows:

William Carter testified that defendant did not
present him, as foreman of the grand jury, a list of
the witnesses to be called on the charge against plain-
tiff, as far as he remembered, but that the names were
sent to Capt. Leaper, a member of the grand jury, in
reference to the burning of the storehouse of Mr.
Lindsay. He testified that the reputation of plaintiff
from a business standpoint was good, but it had been
talked that he burned his store to get the insurance.

R. H. Davis, recalled, testified that while he was
prosecuting attorney he told defendant that the testi-
mony of John Berryman would implicate defendant;
that Berryman was not put in jail after he had made
a statement and sworn to it. He testified that the
indictment against defendant was quashed because
there was not sufficient testimony to attempt to prose-
cute the defendant of this charge.

John Mell testified that he did not tell defendant
that he saw plaintiff in and about that building with
a coal oil can for the purpose of setting fire to it,

but he did say to defendant and W. S. Anthony that he had seen a man come out of the alley back of Lee's warehouse and pick up a coal oil can.

Alman Ing, recalled, testified that when he told defendant he intended to dismiss the indictment against plaintiff, defendant insisted on having it continued to get John Berryman and S. E. Wilson; that he told defendant Berryman's testimony would not help the State and defendant insisted Berryman would tell a different story next time; that he had been served with notice to take the deposition of Wilson, and did not know whether he notified defendant of that fact or not.

On behalf of the defendant, John Ballard testified that he had been subpoenaed in the case for the 15th and there was a new subpoena for the 9th, and his property was attached and he had to go to Arkansas and he borrowed $13 from defendant and was back in Piedmont on the 15th of February, 1905. He testified he told defendant that John Mell had told him that he was watching the hub factory at that time and about ten minutes before the fire broke out he saw Mr. Lindsay go through there between Lee & Company's store and John Berryman's store.

Huff testified that Joe Mell said, "I am going to get all I can out of this case."

W. S. Anthony testified that he went with defendant to investigate the burning of the defendant's house sometime in 1902, and they met Joe Mell in Piedmont. Mell said he had seen a man come from behind a building and get some shavings and described the man, and witness asked if it was Ed Daniels and Mell said, "No. I have told Dr. Bates who it was and he knows." The description he gave was a very good one of plaintiff.

John Hall testified that John Ballard told him to tell defendant that he might have some good testimony for him for twenty-five dollars.

223 Sup—20

The correctness of the instructions will be considered in connection with the objections thereto.

## OPINION.

### I.

Counsel correctly assert that the issue was not whether plaintiff was guilty of the charge of arson which was based upon defendant's affidavit, but did defendant have probable cause for commencing said prosecution?

The circuit court instructed the jury in plaintiff's behalf: "Before you can find defendant was justified or excused in making the affidavit against the plaintiff and causing him to be arrested, you must find that he had probable cause to believe that the charge made against plaintiff was true; and by 'probable cause' is meant a reasonable ground for believing plaintiff guilty, supported by facts and circumstances sufficiently strong of themselves to warrant a prudent or cautious man in the belief that the plaintiff was guilty of the offense with which defendant charged him; and unless you find that defendant was so justified then you will find that the prosecution against plaintiff was without probable cause."

In this same connection the court gave the following instruction for defendant: "The jury are instructed that the information that would justify the making of a criminal complaint, against another, for the purpose of having him arrested, must be of such character and obtained from such sources, that men, generally, of ordinary care, prudence and discretion would feel authorized to act upon it under similar circumstances. And in this case, if the jury believe from the evidence that the defendant made the alleged affidavit for the arrest of plaintiff, and that he was arrested in consequence thereof, then it is a question of fact to be determined by the jury from the evidence

whether the defendant, when he made the complaint, acted upon such information as men of ordinary care, prudence and discretion would have been warranted in acting upon under similar circumstances.''

Error is predicated upon the giving of this last quoted instruction on the ground that it conflicts with the instruction given for plaintiff and is an incorrect statement of the law in that it advised the jury that ''information such as men of ordinary care, prudence and discretion would feel authorized to act upon, under similar circumstances,'' would justify defendant in making the criminal charge against plaintiff, whereas plaintiff insists that nothing short of a knowledge of the existence of facts sufficiently strong of themselves to warrant a prudent or cautions man to believe plaintiff was guilty of said offense, would justify the institution of a criminal prosecution.

We think the contention of plaintiff on this point is hypercritical. When it is said by the court that in these cases the question is not whether there was in fact a sufficient cause for the prosecution (for the acquittal shows that there was not), but whether the prosecutor as a reasonable man believed there was, it does not mean that a prosecuting witness must know of his own knowledge all the facts upon which such prosecution must rest, but that as a reasonable and prudent man he had reasonable grounds to believe the plaintiff was guilty, and in coming to such a conclusion he must have information of such a character and obtained from such sources that men of ordinary care, prudence and discretion would feel authorized to act upon it in similar circumstances. We think the plaintiff has no ground of complaint as to these two instructions. They were as favorable as he had the right to request.

## II.

Plaintiff complains that the verdict was not justified by the evidence. The burden was on the

plaintiff to establish his case. Defendant testified that he was the owner of the house that was burned; that at the time it was destroyed he was a resident of Cape Girardeau, and when he came back to Piedmont to reside he received information that led him to believe it was burned by an incendiary. He had been charged with burning his own property, but the charge was dismissed as without foundation. He began to investigate and found that plaintiff had a printing outfit in said building which was insured for $300, and had collected the insurance, whereas a witness had told defendant that plaintiff had purchased the same outfit for fifty dollars from a woman. He also produced evidence to the effect that plaintiff's reputation for honesty and integrity was bad; that plaintiff was seen on the evening that the property was burned talking with John Berryman, whose reputation was shown to have been very bad for honesty, integrity and burning property; that soon after plaintiff and Berryman were seen talking together and on the same evening, Berryman was seen to give Morris some money and heard to say to him, "Give it to Daniels, and he will know what it is for." Defendant was also told by John Ballard that Joseph Mell had seen plaintiff go towards defendant's building that was burned, with some shavings and an oil can about ten minutes before the fire broke out. And defendant testified that Mell told him the same story. If the jury believed that these things were told defendant, surely the circuit court could not, nor can this court say as a matter of law that an ordinarily reasonable and cautious man would not have believed plaintiff burned the house and have had reasonable grounds for so doing. The circuit court directed the jury this was a question of fact for them to determine, and we think, correctly.

While Mell denied telling defendant this story, defendant was not precluded by Mell's evidence. The jury saw Dr. Bates and Mell and it was their province

to believe or reject the testimony of either or both. They seemed to have believed defendant, and rejected the testimony of Mell, but there was nothing to show, up to the time Mell told Dr. Bates he had seen plaintiff in the compromising position near the building just before it was seen on fire, that Mell was a man of bad reputation for truth and veracity or morality and integrity and such that a reasonably prudent man would not believe his statements. We think the court properly submitted to the jury the question whether the defendant when he made the complaint by filing the affidavit, acted upon such information or circumstances as a man of ordinary care, prudence and caution would have accepted and believed under similar circumstances, and their verdict is not without sufficient evidence to support it, if they credited the testimony of defendant.   [Vansickle v. Brown, 68 Mo. 634.]

### III.

As to the exclusion of the deposition of John Berryman.

Without reproducing this deposition it is sufficient to say it was taken in Nacogdoches county, Texas, without any appearance or cross-examination by defendant. In substance, he testified to an offer by Dr. Bates, the defendant, to Berryman to satisfy a debt of thirty dollars due Bates from the witness, and another account for twenty dollars for which the witness was surety, and to pay him fifty dollars in cash, if lightning would strike the building; that he, witness, told one Daniels that defendant would pay a sum to have the building burned. That Daniels, being drunk, a few days after the fire, told witness that he, Daniels, had burned the building. Now Berryman swears he had nothing to do with the fire, nor did he cause Daniels or any one else to burn it. He never made any demand on defendant for the fifty dollars.

All of this testimony was objected to when it was

offered, but the court admitted it.   Subsequently the court withdrew it from the jury.

It requires no argument or authority to show that the alleged statements of Daniels were wholly incompetent, hearsay of the most pronounced kind.   The statement of Berryman as to what occurred between him and defendant was utterly irrelevant to the issue on trial and was properly excluded.   As to the impeachment of Berryman, it can not be seen how it could have been hurtful, if there was none of his evidence left for the jury to believe or disbelieve.   Moreover, the deposition had been admitted once and the jury had heard it read.

As to the proposition that it was not competent to impeach Berryman's reputation at Piedmont where he had resided nearly all of his life until about three years before the trial of this cause.   Berryman had only resided at Nacogdoches for about four months, not long enough to have formed a reputation one way or the other.   While this court has approved the rejection of proof of reputation after three years, it has not announced an ironclad rule.   Greenleaf, in his work on Evidence, vol. 1, sec. 461 d, 1, says: "Character is a continuous quality, not quickly changed or changeable.   The character of the witness at the time of testifying is that which affects his truthfulness; but his character at another time may well be considered as evidencing his character at the time of testifying. . . . One view, and the correct one, is that character at any preceding time is admissible, provided it is not too remote in time to have real probative value.   A second view is that prior character is not to be resorted to unless for some reason it is difficult or impossible to show present character."

While reputation must ordinarily be proven by witnesses residing in the neighborhood in which the witness whose reputation is sought to be impeached resides, this also is subject to exceptions.   Thus, in

State v. Miller, 156 Mo. 76, a witness was offered to testify to the defendant's general reputation for truth in the neighborhood of Troy, Kansas, where he and defendant had lived. Some nine years previous to the trial the witness had moved to St. Joseph, Missouri, but had visited Troy from time to time, and when he lived there was sheriff of the county. He testified he knew defendant's reputation from what the people generally said about him when witness was visiting there. It was said: "This court has approved the rejection of testimony that covered a period of over three years, but the question here presented is whether a witness who had known another witness's reputation for truth for nine years and down to the period of the trial is incompetent to speak of such reputation, which has remained the same all the time. We think not."

Now in this case Berryman's reputation was known in Piedmont by the witnesses who resided there up to the time of his removal from that place. Having no established residence elsewhere we think it was no violation of the rule to permit the witnesses who knew his reputation in that place up to his removal to state what it was.

The testimony of Harry Bates stands on an entirely different footing. This was permitted because it had been communicated to defendant and was to be considered in determining whether defendant believed plaintiff was guilty and whether he had reason to so believe.

In our opinion, the cause was properly submitted to the jury and there is no error in the record which would justify a reversal of the judgment.

Judgment affirmed. All concur.