MESTER et al. v. UNITED STATES et al.

Civil Action No. 7106.

District Court, E. D. New York.

Feb. 4, 1947.

Bernard Noskin, of Brooklyn, N. Y., and Philip J. Hennessey, Jr., and Harry P. Warner, both of Washington, D. C. (Segal, Smith & Hennessey, of Washington, D. C., of counsel), for plaintiffs.

J. Vincent Keogh, U. S. Atty., of Brooklyn, N. Y., and Benedict P. Cottone, Gen. Counsel, and Harry M. Plotkin, Asst. Gen. Counsel, Federal Communications Commis-

sion, both of Washington, D. C., Frank J. Parker, Asst. U. S. Atty., of Brooklyn, N. Y., and Max Goldman, Erich Saxl, and Arnold D. Berkeley, Attys., Federal Communications Commission, all of Washington, D. C., for the United States and Federal Communications Commission.

Sanford H. Cohen, of New York City, for defendants Arde Bulova and Harry D. Henshel.

John V. Higgins, of New York City (Charles B. McGroddy, Jr., of New York City, of counsel), for defendant Richard E. O'Dea.

Before FRANK, Circuit Judge, and MOSCOWITZ and GALSTON, District Judges.

MOSCOWITZ, District Judge.

This suit seeks to have a decision and order of the Federal Communications Commission adjudged unlawful and void and to have this Court set aside and enjoin the enforcement of the said order.

Section 310(b) of the Communications Act of 1934, Title 47 United States Code Annotated, § 310(b), provides that:

"The station license required hereby, the frequencies authorized to be used by the licensee, and the rights therein granted shall not be transferred, assigned, or in any manner either voluntarily or involuntarily disposed of, or indirectly by transfer of control of any corporation holding such license, to any person, unless the Commission shall, after securing full information, decide that said transfer is in the public interest, and shall give its consent in writing."

Upon forms prescribed by the Commission and in accordance with its rules and regulations, application was made to it for its consent to a transfer by the defendants Bulova and Henshel to the plaintiffs of stock holdings by the former which would have vested in the purchasers the substantial ownership and control of radio station WOV in New York City. It is with reference to the decision and order of the Commission denying its consent to such transfer that relief herein is sought.

The jurisdiction of this Court is invoked under Section 402(a) of the Communications Act of 1934. By this section, the provisions of the Act of October 22, 1913, c. 32, 38 Stat. 219, 28 U.S.C.A. §§ 41 (28), 43–48, relating to the enforcement or setting aside of orders of the Interstate Commerce Commission are made applicable to suits to enjoin, set aside or annul any order of the Federal Communications Commission, with a number of exceptions. The Act of October 22, 1913, known as the Urgent Deficiencies Act, provides for the convening of this three-judge district court. Review of orders in the instances enumerated as exceptions under 402(a) must be sought under 402(b) in the Court of Appeals of the District of Columbia. Scripps-Howard Radio v. Federal Communications Commission, 1942, 316 U.S. 4, 62 S.Ct. 875, 86 L. Ed. 1229; Columbia Broadcasting System v. United States, 1942, 316 U.S. 407, 416, 62 S.Ct. 1194, 86 L.Ed. 1563. While all parties have conceded jurisdiction, this Court might on its own initiative find itself lacking in authority to entertain the suit. However, the language of Section 402(a) leaves little room for doubt that it authorizes a review by a three-judge court of any order of the Federal Communications Commission but those specifically excepted. It has been held that an application for the Commission's consent to a transfer is not the equivalent of an application for a radio license and that the exception of the latter from 402(a) does not authorize an appeal from the Commission's denial of consent to transfer to the Court of Appeals of the District of Columbia. Federal Communications Commission v. Columbia Broadcasting System of California, Inc., 1940, 311 U.S. 132, 61 S.Ct. 152, 85 L.Ed. 87.

It has been noted that under Section 310 (b), the Congress has enacted that no transfer shall be effected unless the Commission "shall, after securing full information, decide that such transfer is in the public interest * * *". In pursuit of information which may be relevant to its determining whether or not a contemplated transfer is in the public interest, the Commission has adopted a rather lengthy form upon which it requires application for approval of a transfer to be made. In this case, after the filing of said form, a hearing was held, at which the plaintiffs were orally examined

in quite some detail and had the opportunity to make known to the Commission all relevant facts.

The Commission found that the transferees were not possessed of a sense of public responsibility, which the Commission deems an essential qualification for any licensee, and concluded as a result thereof that the contemplated transfer would not be in the public interest. The existence of the facts comprising the basis for the decision is not in dispute. It seems that the plaintiffs have for some years been partners in a business marketing edible oils under the name and style of the Balbo Oil Company. Upon at least six occasions, their products were the subject of in rem proceedings in United States district courts to condemn them for weight shortages, false and misleading labeling or other deceptive practices. A Federal Trade Commission proceeding against them, based upon fraudulent advertising, resulted in their stipulation to a cease and desist order against them. A suit brought by the Office of Price Administration against them for selling oils at over-ceiling prices and failing to keep required records was settled by their payment to the government of some $3700.

As one of its reasons for denying consent, the Commission concluded from these facts that in the conduct of their edible oil business, handling a product for human consumption, the transferees had manifested a flagrant disregard for government regulations designed for public protection and that they had, in their deceptive practices, demonstrated the absence of a sense of public responsibility, which would make inadvisable, from the viewpoint of public interest, the transfer of a radio station and license to these intended purchasers. This determination was likewise based upon the second reason that the testimony of the transferees concerning their involvement with governmental bodies in these fraudulent practice proceedings was evasive and showed an extreme lack of candor upon their part, which made inadvisable their being accorded the public trust of operating a radio station. Even the cold printed minutes furnish ample justification for the findings made. The testimony of Murray Mester, one of the plaintiffs, indicates an obvious attempt to conceal and misrepresent the difficulties with the governmental bodies adverted to. Only when records were produced, did the witness show any inclination to recall or make known the facts involved. If lack of candor is a proper ground upon which the Commission may deny its consent to a transfer, it is amply demonstrated in this case.

The legal question is raised by the plaintiffs whether the Commission is empowered to take such factors into its consideration. Their arguments seem to crystalize into two main contentions, based upon equally strained interpretations of the statute. Concerning the application forms which the Commission is authorized to require, Section 308(b) of the Act provides that they "shall set forth such facts as the Commission by regulation may prescribe as to the citizenship, character, and financial, technical, and other qualifications of the applicant to operate the station * * *". Plaintiffs say that the Commission is authorized to investigate into and base its decision upon only those matters which are specifically asked for upon the application form pursuant to a duly promulgated regulation issued by the Commission enumerating the matters it will or may consider in passing upon the character of an applicant. The only question concerning character which appears upon the application form is the inquiry whether the applicant has been convicted of a felony or of a crime involving moral turpitude. As the plaintiffs would have us construe Section 308(b), the absence of a regulation or general question concerning character would preclude the Commission from taking into consideration anything concerning an applicant's character, other than that which is evoked by the one question, namely, conviction for felony or of a crime involving moral turpitude.

Even if we were to confine ourselves to Section 308(b), we would be compelled to hold that the statutory specification therein of what the applicant shall set forth upon the form is not to be construed as limiting the scope of the subsequent hearing provided for in Section 309(a). It is designed to require compliance of applicants and the Commission would be justi-

fied in denying a license to a person who refused to "set forth" the matters required upon the application form. But where the Commission has determined, from the face of the form or from any other information in its possession, to refuse the license, a hearing is to be held at which examination of the applicant is proper not only as to matters raised by questions on the form but also as to those matters suggested by the independent information which the Commission possessed, subject only to the limitation of relevancy to the application being considered. It would indeed be far-fetched to hold that a general examination of an applicant's character is sanctioned only if the form contains the inclusive inquiry: "Are you a person of good moral character?", and not otherwise. It may here be noted that section 3.24 of the Commission's rules provides that no application shall be granted without a satisfactory showing that the applicant is of good character.

A person's "character" is usually thought to embrace all his qualities and deficiencies regarding traits of personality, behavior, integrity, temperament, consideration, sportsmanship, altruism, etc. which distinguish him as a human being from his fellow men. His disposition toward criminal acts is only one of the qualities which constitute his character. The statute subjects an applicant's "character" to scrutiny by the Commission; in the absence of a legislative directive to the narrow interpretation advanced by plaintiffs, courts must give to words their commonly understood definitions and in this case "character" certainly embraces involvement in the litigation proved against the plaintiffs and their disposition not to be ingenuous and truthful concerning it.

However, we need not rest upon Section 308(b), which is primarily concerned with original applications for radio licenses. It is Section 310 which imposes the necessity of Commission consent to the transfer of a license. In empowering the Commission to decide whether the transfer is in the public interest, that section provides for such determination "after securing full information." No specifica-tion is made limiting the source from which such information is to be derived. "Full information" would encompass anything and everything which would or might affect the Commission's decision as to whether or not the public interest would be served. Inquiry into an applicant's character, as commonly understood, would certainly be material. An inquiry which concerned itself only with convictions for felony or of crimes involving moral turpitude would be grossly inadequate. It might indeed be most inadvisable from the public viewpoint to entrust the operation of a radio station to a person unworthy of belief and evidencing disregard for regulatory laws, even though he had never been convicted of a felony.

Thus, the scope of the inquiry here made by the Commission was clearly within the letter of its prescribed powers; that it was within the spirit of the Communications Act goes almost without saying. The conclusions of the Commission are well warranted by the evidence adduced at the hearing. Having reached these findings, this Court has no power to disturb the administrative determination made. Nor is it of any consequence that the Commission has upon other occasions accorded less significance to or even ignored completely the facts which here have induced denial of its consent to the transfer. An administrative agency may always change its mind and a person adversely affected thereby is not denied any rights without due process of law. Federal Communications Commission v. WOKO, Inc., 67 S.Ct. 213.

The third reason advanced by the Commission is not important in view of the disposition made herein concerning the other two but in passing it may be noted that it is unimpressive. The Commission has itself determined a number of times that an intending purchaser need not personally possess a familiarity with engineering or the other technical qualifications required properly to operate a radio station. As long as there is available to the purchaser a competent staff to handle these matters, no detriment to the public interest from the transfer is shown. Many

of the large radio stations have been transferred to and are owned by persons who possess no technical knowledge of radio broadcasting whatever, nor of the Communications Act or regulations of the Commission. In its decision here, the Commission drew attention to the absence of any definite plans on the part of these transferees as to their future operation of the station and the non-existence of any contractual relationship which would insure the continuance of the present status, upon the basis of which it perceived a distinction from other instances. But the testimony of Murray Mester was to the effect that those presently employed would be retained or others at least as competent in the required skills would be procured. There can be no guarantee that a contract of employment will not be breached and its existence offers no greater assurance of a qualified staff than the intentions expressed by the transferees here that they would not disturb the existing arrangement unless they contemplated some improvement. The distinction sought to be made by the Commission is without merit.

 One last question has been raised by the defendants Bulova and Henshel, who are the present owners and intended transferors of radio station WOV. They suggest that this review should be dismissed upon the ground that the controversy is rendered moot by a provision in the contract of sale to the effect that the transfer and sale "is subject to the approval of the Federal Communications Commission." They argue that since the Commission has not granted its approval, the contract thereby became a nullity and cannot be revived even should this Court reverse the Commission and its approval subsequently be obtained. They seek to liken the clause to a condition in a contract concerning realty that the sale shall be subject to approval by a named title insurance company. The analogy has no efficacy. A title company may validly act as arbitrarily as it pleases and the parties are presumed to have contracted with the possibility in mind of an arbitrary refusal to insure the title. But the Federal Communications Commission has power to act only within the bounds of its authority and a determination which is not within such bounds is unlawful and a nullity and thus may not be presumed to have been a fact with reference to which the contract was made, unless that intent of the parties is unambiguously expressed. Every contemplated transfer of a radio station which is made the subject of contract must by law hinge upon a valid approval by the Federal Communications Commission. The parties here did no more than to incorporate that implication into their express agreement. The transfer which has been contracted for is still subject to the approval of the Commission and could not be effected without it. But no time is specified within which that approval must be procured, nor is it a part of the agreement that an improper disapproval by the Commission in the first instance should void the contract. The review before us is not moot.

### Findings of Fact.

1. This suit seeks to have a decision and order of the Federal Communications Commission adjudged unlawful and void and to have this Court set aside and enjoin the enforcement of said order. The Commission has moved for summary judgment denying the application and the defendants Bulova and Henshel have moved to dismiss the complaint upon the ground that the application is moot. Since there is no dispute as to the facts for the purpose of the matters before this Court, the findings of fact and conclusions rendered by the Commission on March 4, 1946, except number 13 of the findings, number 2 of the conclusions, and the reference in conclusion number 5 to technical qualifications, are adopted as the findings herein. There is substantial evidence in the record to support the said findings and conclusions.

### Conclusions of Law.

1. This court has jurisdiction to entertain the applications before it.

2. The application is not moot.

3. The commission is not bound by determinations it may have made in the past in the cases of other applicants inconsistent with the conclusion reached herein.

4. It is within the province of the Commission's authority to determine that a transfer to a person who is not of good character is contrary to the public interest.

5. "Character" includes involvement in civil litigation and includes a person's disposition to be ingenuous and truthful.

6. It is not a prerequisite to the Commission's authority to investigate an applicant's general character that an all-inclusive inquiry concerning character shall appear on the application form.

7. The motion for summary judgment denying the application of the plaintiffs is granted and the motion of the defendants Bulova and Henshel to dismiss the complaint for mootness is denied.

GALSTON, District Judge, concurs.

FRANK, Circuit Judge (concurring).

I agree with all but one paragraph of the foregoing. It seems to me that the Commission's third reason was also, independently, a sufficient ground for its order. For I think it within the province of the Commission to make case-to-case determinations of the adequacy of the applicant's arrangements necessary to insure that the applicant will have a competent staff, if its application is granted. I think that the Commission could properly hold that the testimony of Murray Mester, to which my colleagues refer, gave insufficient assurance on that score, and that such a conclusion is not subject to judicial scrutiny.