CITIZENS BANK OF NEVADA, A NEVADA CORPORATION, PETITIONER, v. GRANT L. ROBISON, SUPERINTENDENT OF BANKS OF THE STATE OF NEVADA, THE STATE BOARD OF FINANCE OF THE STATE OF NEVADA AND CHARLES H. RUSSELL, PETER J. MERIALDO, DAN FRANKS, CHARLES H. JONES AND M. A. DISKIN, MEMBERS OF THE STATE BOARD OF FINANCE, RESPONDENTS.

No. 3994

March 28, 1958.                                    323 P.2d 705.

*H. Dale Murphy,* of Reno, for Petitioner.

*Harvey Dickerson,* Attorney General, Carson City, for Respondents.

## OPINION

By the Court, BADT, C. J.:

Petition for a writ of review to review the action of the State Board of Finance of the State of Nevada, which approved the action of the superintendent of banks denying the application of the petitioner herein for a license to conduct a banking business within the state. The board denied the application (1) because Henry Girola, as the main organizer of applicant, by reason of his financial dealings in connection with customers and stockholders of American Credit Corporation and Bankers Trust Company, had conducted the affairs of those corporations in a manner reflecting on his business ability and on his intention to carry out his promises with individuals in connection with the sale of securities to them, and particularly because his failure to carry out such promises was not one to inspire confidence, NRS 659.050, 2(d); (2) because the men named as directors of petitioner have not sufficient knowledge of the operation of a bank to inspire confidence from the public in the operation of such bank, id.; (3) because a total of five banks operating in the city of Reno adequately served the public, id. (f); and (4) because of the situation under which the president and manager of the proposed bank demanded and was given a guaranty by the stockholders of a 5-year employment at a salary of not less than $15,000 per year. The

ground most seriously advanced, however, was the first one above-mentioned, and the one that occupied most of the record in the hearing before the State Board of Finance.

Petitioner, while conceding the rule that such boards are not bound by the strict rules of evidence and may accept hearsay testimony, insists that the board's ruling may stand only if supported by "substantial" evidence, and that this may not be supplied by hearsay alone, citing 42 Am.Jur. 467, Public Administrative Review, sec. 132. It insists that if we delete the evidence of a hearsay nature there is a lack of any substantial evidence upon which the board could have predicated its findings. We may concede for the purpose of this review that if the record contained nothing but hearsay evidence, the contention that it lacked sufficient substance to support the order might be sustained. Indeed a very large proportion of the evidence adduced consists of letters written by individuals to the superintendent of banks complaining of the actions of Girola in the sale of common stock, preferred stock and bonds of American Credit Corporation and Bankers Trust Company. This promotes the thought that as the persons writing these letters were all residents of the state, it should have been a comparatively simple matter to produce at least a few of them as witnesses and to take the depositions of others. This, counsel for the board apparently considered either unnecessary or inexpedient.

The letters referred to were from a large number of persons complaining that Girola had sold them stock and bonds amounting to many thousands of dollars with the assurance that he would at any time on 90 days' notice (in some cases 60 days and in some 30 days) pay them back their money for their stock or bonds and that they would receive regular dividends; that when they requested their money they were put off in various ways; that after a time Girola failed even to acknowledge receipt of repeated letters from them. Other letters from responsible attorneys in the state were to the effect

that numerous clients had written them letters of a similar nature. One letter from a banker was to like effect. Two such letters were in the form of affidavits. These letters require no further detailed discussion as to content. All are definitely classifiable as hearsay. Respondents vehemently insist that these letters were received without objection and must therefore be given full evidentiary weight and such recognition of substance as if the writers had personally appeared and testified. With this contention we are unable to agree. The chairman of the board made it definitely known to the petitioner at the commencement of the hearing that hearsay would be received and that objections to the evidence on such ground would not be sustained. Petitioner cannot be said to have waived his objection simply because it was not repeatedly asserted.

We turn then to the record to see if it contains substantial evidence as to the unfitness of Girola to inspire confidence in his role as organizer of the bank and the owner of 42.6 percent of its stock.

Grant L. Robison, state superintendent of banks, testified concerning his audit of the books of the American Credit Corporation (controlled and managed by Girola) and particularly its balance sheet as of January 31, 1952. This corporation was at the time subject to supervision of the superintendent of banks. Mr. Robison submitted a balance sheet as of January 31, 1952 as recast by his department. The statement as made by the corporation showed a surplus of $73,590.02. Mr. Robison testified that he had eliminated a number of items which he considered were worthless assets. The result was, not a surplus in any sum, but a capital impairment of $244,-455.25. He testified in detail as to each item that he had eliminated. He struck out an item of $113,058.68 in bad loans, as well as $44,245.64 accrued interest on these loans, which had never been collected, although in arrears for long periods of time. He struck out an item of $17,404.64 expenses incurred over a period of years for collection of accounts, repossession expenses and attorney fees; also $4,500 good will and $27,092.56 organization expense and $96,386 commission on sale

of stock which had been entered as capital stock expenses and had been so carried as an asset for many years. The superintendent of banks further testified: "Further briefing the records, you get that the Bankers Trust Company, which is owned by Mr. Girola, owes the American Credit Corporation nearly $300,000. We were refused a financial statement of the Bankers Trust Company, but on the basis of oral information given to us, we are inclined to doubt the solvency of this company and their ability to completely liquidate the loan of the American Credit Corporation." It is unnecessary to cite further details of his testimony, which, however, reveal a complete examination of the assets, from which items were stricken in the Elko office, the Ely office, the Las Vegas office and the Reno office. He reported this with reference to the statement furnished by Mr. Girola to the stockholders of American Credit Corporation "which was not factual and which was concealing the true condition." With reference to the statement contained in petitioner's application for a banking license as to anticipated income and expense during the first year of operation, Mr. Robison testified that the same was "rather fantastic and the proposed salaries of the officers are so far out of line that it raises suspicion that the bank would be operated for the benefit of the promoters rather than for the stockholders and the good of the community."

The superintendent of banks further offered in evidence what appears to be a photostat copy of a certified copy of a judgment of the District Court of the United States for the Northern District of the California Southern Division in the case of the United States v. Henry Girola, adjudging the defendant guilty upon the verdict of a jury on a charge of violation of the federal internal revenue act with a judgment of imprisonment in a county jail for one year with $273.50 costs. The defendant was placed on probation. The record included photostat copies of the grand jury's indictment and other papers. The petitioner contends that the proceedings in the federal court showed no act of Girola involving moral turpitude but simply a dispute between Girola

and the internal revenue department as to whether a claimed deduction of some $21,000 loss from sale of securities was a proper deduction. We shall not enter into a discussion of this question. The board was entitled to take this matter, among others, into consideration. The testimony of the superintendent of banks as to Girola's operation of American Credit Corporation, and the evidence of Girola's conviction both constituted substantial evidence.

The superintendent of banks further offered in evidence a photostat copy of a report of the auditor of the Securities Exchange Commission, addressed to the assistant commissioner of the Los Angeles office of the Securities Exchange Commission, with reference to the application of Consumers Discount Company for the sale of its stock. This report contains 11 pages of single-spaced typewriting and contains a "chart indicating the organization of the Girola companies which should give a visual picture of the various corporations in the group controlled by Henry Girola and associates." These companies include Italian Bond & Share Corporation, Continental Credit Company, Girola Bros., Italian-American Securities Corporation, Italian Investment Corporation, Italian National Building & Loan Association, Newcastle Building & Loan Association, State Building & Loan Association and other building and loan associations. These are characterized in various ways, such as "securities and brokerage," "finance company," "parent and holding company" etc. Other companies named are Continental Seaboard Corporation, Seaboard Equities Inc., Reserve Building & Loan Association etc. The report discusses these various corporations in detail. A few of the findings may be noted. A consolidated statement of Italian Investment Corporation and certain subsidiaries which showed a surplus resulted upon examination in a deficit of $169,559.85. It continued to sell its shares to the public through 1930, but permission to sell further shares was suspended for failure to file proper reports despite repeated requests for additional information. The permit of the Italian Bond & Share Corporation was suspended in 1931 on account of

"manipulation of securities and particularly the execution of a contract with Italian Investment Corporation and other affiliated companies by which Italian Bond & Share Corporation would purchase the shares of those [companies] at advantageous prices and subsequently resell these securities at prices not warranted by the facts."

The report continues: "After the suspension of the permits of Italian Investment Corporation, various attempts were made by the Girolas to obtain authority from this division to sell and issue shares to the public * * * [T]he Girolas apparently believed that a permit might entitle them to raise more capital from the public * * *." These included the Continental Seaboard Corporation to take the place of Italian Investment Corporation as the parent company; Seaboard Equities Inc. as a subholding corporation; Continental Share Corporation Ltd., the brokerage company for the new group; and Continental Credit Corporation as the operating finance corporation of the group. An involuntary petition in bankruptcy was filed against Continental Seaboard Corporation and a voluntary petition in bankruptcy by Seaboard Equities Inc. in June 1932. Salaries and expense accounts were drawn by the Girolas from 1929 to 1932, inclusive, in excess of $100,000. Consumers Discount Company was organized in November 1932 "after the collapse of the Continental Seaboard Corporation and its subsequent bankruptcy."

When this record was offered in evidence an objection was made as follows: "We object to that because it is not related to inspiring confidence of the people in Nevada at all." Mr. Robison stated: "* * * my purpose in bringing out all of this is to show the type of operator Mr. Girola has been for many, many years and certainly not the type who should be in the banking business * * *." The relevancy and materiality of this evidence is apparent on the issue under the statutory requirement that the personnel of the organizers of the corporation be such as to inspire confidence. It may be contended that this report is hearsay, a contention which we need not determine. However, it was an official report

of findings based on an examination by federal officials investigating the qualifications of Girola's corporation to sell its stock to the public. In this respect see Third National Bank & Trust Co. v. United States, C.C.A. 6th Circuit, 53 F.2d 599. In any event, whether hearsay or not, the report was properly admitted in evidence.

As to the objection that the evidence is not related to inspiring confidence "of the people in Nevada," we do not consider the distinction material. Even if *reputation* could be said not to follow a person across a state line, the *character* would remain with the person no matter. how many state lines were crossed. We think that the statutory requirement that the *personnel* of the organizers be such as to inspire confidence was a broad requirement for *character* rather than for *reputation*.

The original articles of incorporation of Citizens Bank of Nevada named Henry Girola as president. In the amended articles he does not appear as president or as a director. Petitioner contends that the objections of the superintendent of banks and the State Board of Finance to the character and operations of Henry Girola personally are objections to him as a stockholder, owning 42.6 percent of the stock of the proposed bank, and that objections to a stockholder are not within the purview of the statute. It is true that the superintendent of banks noted: "*  *  *  Mr. Henry Girola is listed as the owner of stock in the amount of $64,000, which is 42.6 percent of the total issued. Purchase by him of only 7.5 percent additional stock would give him complete control." It is also true that the Board of Finance found: "That Henry Girola is one of the original incorporators of said corporation, and at the present time is the owner of 42.6 percent of the total issued and outstanding stock; *  *  *." However, the controlling finding of the board was: "That under the evidence, as appears from the record of the proceedings, the board finds that Henry Girola was and is one of the *organizers* of said bank, and has participated actively in the sale of stock of said corporation, and in directing the affairs of said

bank." Such finding was apparently made under the provisions of NRS 659.060, 2, under which the inquiry of the board is directed to whether the superintendent of banks was in error in his reasons for refusing a certificate. Under 659.050, 2(d), the superintendent of banks shall issue the certificate if he is satisfied, among other things, that "The personnel of its *organizers* and officers and directors is such as to inspire confidence." (Emphasis supplied.) There is ample support of the board's finding that Girola was an organizer.

Petitioner's allegation that respondents, in denying petitioner a certificate, acted in an arbitrary, unreasonable and capricious fashion is not supported by the record.

Being of the opinion that the record contains substantial support of the board's order affirming the order of the superintendent of banks denying to petitioner a certificate to transact a banking business in the State of Nevada, and substantial support for its conclusion that the superintendent of banks was not in error in his said reason for such refusal, as herein discussed, NRS 659.-060, subd. 2, it becomes unnecessary to pass upon the other reasons assigned for his action.

The order of the board is affirmed.

EATHER and MERRILL, JJ., concur.