FIRST NATIONAL BANK OF WOR-LAND, a federal chartered banking institution, and Stockgrowers State Bank, a state chartered banking institution, Appellants (Protestants),

v.

FINANCIAL INSTITUTIONS BOARD of the State of Wyoming; all of said Board, namely, Arthur R. Piz, G. W. McIlvaine, Harry Geldien, James A. Zaring, Dwight D. Bonham, W. D. Townsend, Jr., Virginia S. Purdy and Stanley R. Hunt; and Dwight D. Bonham, State Examiner, Wyoming; and Robert T. Noel, Arthur A. Abbey, Sol W. Bernstein, K. L. McShane, and Gordon A. Williams, individually and as organizers of the proposed First Wyoming Bank–Worland, Appellees (Applicants).

No. 5258.

Supreme Court of Wyoming.

Sept. 15, 1980.

Elmer J. Scott of Scott, Shelledy & Berryman, John W. Davis of Davis, Donnell & Worrall, Worland, and I. Thomas Bieging of Morrato, Gueck & Colantuno, P.C., Denver, Colo., an attorney in good standing of the State of Colorado admitted specially for the purposes of this case, with oral argument presented by Bieging, for appellants. Edwin H. Whitehead, Cheyenne, introduced Bieging to the court.

John D. Troughton, Atty. Gen., Peter J. Mulvaney, Deputy Atty. Gen., Richard

Scott Rideout, Asst. Atty. Gen., Cheyenne, and Blair J. Trautwein (argued) of Hathaway, Speight & Kunz, Cheyenne, signed the briefs for appellees.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice.

Appellants–protestants appeal from an order of the district court affirming the Financial Institutions Board's (hereinafter referred to as Board) approval of a new state bank in Worland.

We affirm.

Appellants word the issues presented for review as follows:

"A. Whether the Financial Institutions Board was properly constituted in that George W. McIlvaine and Arthur R. Piz were both directly or indirectly connected with Wyoming Bancorporation.

"B. Whether § 13–2–211 and § 13–2–212, W.S.Rep.Ed., 1977, are internally inconsistent and fail to place the parties on notice of the standards to be used for approval of a bank charter.

"C. Whether the Board acted improperly in failing to grant the Appellants' Motion for Continuance of the hearing.

"D. Whether the Board erred in finding that the applicants had complied with all the provisions of law in seeking a bank charter.

"E. Whether the Findings of Fact of the Board with respect to projected deposits, potential profit, reputation of the Directors in the community and compliance by the applicants with all the provisions of law were supported by substantial evidence.

"F. Whether the decision of the Board failed to set forth basic facts necessary to support the conclusion that a public need or convenience would be served by the proposed bank, that conditions within the community would support a successful operation of the Bank, and whether the capital was adequate.

"G. Whether the decision of the Board was arbitrary, capricious, and characterized by an abuse of discretion.

"H. Whether the applicants failed to comply with the provisions of § 13–2–212(a)(iv), W.S.Rep.Ed., 1977.

"I. Whether the granting of the charter subject to the approval by the Federal Reserve Board, constitutes a redelegation of legislative authority not permitted under the Wyoming constitution."

We will set forth the facts pertinent to each issue in the discussion thereof.

## IMPROPERLY CONSTITUTED BOARD (ISSUE A)

The application to organize the bank was made by Robert T. Noel, Arthur A. Abbey, Sol W. Bernstein, K. L. McShane and Gordon A. Williams. However, they were actually acting on behalf of Wyoming Bancorporation, and Wyoming Bancorporation was to purchase all of the stock of the proposed bank except for the qualifying shares. The Financial Institutions Board consists of seven members appointed by the governor and with the state examiner as an ex officio member. Section 13–2–204(a), W.S.1977. Subsection (b) of § 13–2–204 provides:

"(b) The governor shall appoint the members of the board from the following professions: two (2) members shall be officers of a state or national bank; one (1) member shall be an officer of a state or federal savings and loan association; and four (4) members shall be from the public at large and shall not be directors, officers or employees of any financial institution. *Two (2) or more members of the Board may not be connected, directly or indirectly, with the same financial institution or holding company,* and no member may participate in any proceeding involving any institution with which he is connected or with which he has a conflict of interest." (Emphasis supplied.)

At the time of the hearing on this matter, Board member, Arthur R. Piz, was director of the First Wyoming Bank, N.A., Kemmerer, an affiliate of Wyoming Bancorporation, and Board member, G. W. McIlvaine, owned

50 shares of Wyoming Bancorporation stock.[1]

■ The proper *and exclusive* method of challenging the right of a board member to hold office is a quo warranto proceeding. *Board of Trustees of School District No. 3 v. District Boundary Board of Natrona County*, Wyo., 489 P.2d 413 (1971), supplemented by 489 P.2d 1393 (1971); *Dickerson v. City Council of City of Buffalo*, Wyo., 582 P.2d 80 (1978). Appellants' challenge of the constituency of this Board cannot be made in the fashion here attempted. The actions taken by the Board, even if improperly constituted, are actions of a de facto board and, therefore, valid and binding. *Ex Parte Ward*, 173 U.S. 452, 19 S.Ct. 459, 43 L.Ed. 765 (1899); *May v. City of Laramie*, 58 Wyo. 240, 131 P.2d 300 (1942); See *State v. London*, 194 Wash. 458, 78 P.2d 548 (1938).

CONSISTENCY OF § 13–2–211, W.S.1977
WITH § 13–2–212, W.S.1977 (ISSUE B)

■ Appellants contend that they were not placed on notice of the standards to be used in approving the application because §§ 13–2–211 and 13–2–212, W.S.1977 are "internally inconsistent."

Section 13–2–211, W.S.1977 provides:

"(a) Upon receiving the articles of incorporation, application and other information required, the state examiner shall make a careful investigation and examination of the following:

"(i) The character, reputation, financial standing and ability of the organizers;

"(ii) The character, financial responsibility, banking or savings and loan or other financial experience and business qualifications of those proposed as officers;

"(iii) The character and standing in the community and state of those proposed as directors, stockholders or owners;

"(iv) The need in the community where the institution would be located giving particular consideration to the adequacy of existing financial facilities and the effect that the purposed institution would have upon existing financial institutions in the community;

"(v) The ability of the community to support the proposed institution, including existing competition, the economic history of the community and the opportunity for profitable employment of financial institution funds; and

"(vi) Such other facts and circumstances bearing on the proposed financial institution as the state examiner may deem relevant.

"(b) The state examiner shall submit his findings verbally and in writing at the public hearing on the application and shall be subject to cross–examination by any interested party. No relevant information shall be excluded by the board as hearsay."

Section 13–2–212, W.S.1977 provides:

"(a) * * * the board shall *in its discretion* approve or disapprove the application, but it shall not approve the application until it has *ascertained to its satisfaction*:

"(i) The public need and convenience will be promoted by the establishment of the proposed financial institution;

"(ii) Conditions in the community in which the proposed financial institution would transact business afford reasonable promise of successful operation;

"(iii) The financial institution is being formed for no other purpose than the legitimate objects comtemplated [sic] by the laws of the state;

"(iv) The proposed capital and surplus are not less than the required minimum and are adequate in light of current and prospective conditions;

"(v) The proposed officers and directors have sufficient experience, ability and standing to afford reasonable promise of successful operation;

---

1. Mr. Piz was not present at the hearing and Mr. McIlvaine disqualified himself from the proceedings.

"(vi) The name of the proposed financial institution does not resemble so closely as to cause confusion the name of any other financial institution transacting business in the county; and

"(vii) The applicants have complied with all applicable provisions of law.

"(b) The board shall take action upon the application by stating its findings of fact and conclusions of law. If the board approves the application, the state examiner shall endorse upon the articles of incorporation the approval and shall file one (1) copy with the secretary of state, retain one (1) copy in his files and return one (1) copy to the applicants within twenty (20) days after the date of the decision of the board approving the application. If the board disapproves the application, the state examiner shall mail notice of the disapproval to the applicants within twenty (20) days after the board's negative action."

We fail to see any inconsistency in the two sections. The investigative results from compliance with § 13–2–211 are made available to the board for use in making the determinations required by § 13–2–212. The investigation made pursuant to § 13–2–211 can be of real assistance to the board when the application is not contested. It is likewise valuable in gauging the evidence presented in a contested case. Applicants and protestants have notice of the required qualifications as set forth in § 13–2–212 and of the scope of the investigation conducted pursuant to § 13–2–211. The two statutes speak to two different aspects of the procedure and are not inconsistent.

## MOTION FOR CONTINUANCE
### (ISSUE C)

The State Bank Examiner, by letter dated March 27, 1979, refused appellants' request that they be furnished all financial and biographical information on the organizers, the Examiner having contended that the requested information was confidential. After a complaint by appellants to the district court, the court ordered that the requested information be furnished to them by April 17, 1979, and such was done. The hearing was held on April 18, 1979. At the beginning thereof, protestants moved for a continuance on the ground that they had not had sufficient time to review the data furnished to them on the previous day. Ruling on the motion was deferred until the conclusion of the proceedings, at which time it was denied.

■ The granting or denying of a motion for continuance is in the sound discretion of the trial court and will be reviewed only to determine whether or not there has been an abuse of discretion. *Holly Sugar Corporation v. Perez*, Wyo., 508 P.2d 595 (1973); 4 Am.Jur.2d Appeal and Error § 84; 5A C.J.S. Appeal and Error § 1600. The same gauge is applicable to the treatment of such motion in an administrative hearing. *Northern National Bank v. Banking Board*, Colo.App., 511 P.2d 940 (1973); *First National Bank v. Oklahoma Savings and Loan Board*, Okl., 569 P.2d 993 (1977). Thus, the question here is whether or not the Board abused its discretion in denying the motion for continuance. We recently said:

"A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances. * * *"

*Martinez v. State*, Wyo., 611 P.2d 831, 838 (1980).

■ A review of the material furnished to appellants the day before the hearing reflects that a short period of time is sufficient for an examination thereof. The material had little pertinency to the evidence presented at the hearing or to the lines of inquiry there made of the several witnesses. The Board did not rule on the motion until the conclusion of the hearing and after it had determined the injury, vis–a–vis the evidence, which appellants would suffer if their request for additional time was denied. And, it could thereby gauge the ex-

istence, or nonexistence, of prejudice to the appellants from such denial.

In its ruling, the Board did not exceed the bounds of reason under the circumstances. It could reasonably conclude that additional time was not necessary for examination of the material. The record does not reflect a showing of prejudice by appellants as a result of the ruling. An abuse of discretion is not evidenced.

## COMPLIANCE WITH LAW (ISSUE D)

■ Rules of the Board require the filing of financial and biographical reports on the organizers, directors and officers of a proposed bank as part of an application for such bank. Appellants contend that the applicants for this new bank did not comply with this requirement inasmuch as a financial and biographical report on Wyoming Bancorporation was not submitted with the application.

There was no effort to conceal the fact that Wyoming Bancorporation would purchase most of the stock of the proposed bank as soon as such could be done without violating federal law. But Wyoming Bancorporation was not an organizer of the proposed bank. Five individuals made the application and were the organizers. The necessary financial and biographical reports were filed for the organizers, directors and officers of the proposed bank. Beyond that, the financial records of Wyoming Bancorporation were on file with the State Examiner and were available to the general public. Mr. R. L. Nichols of the State Examiner's office testified that he reviewed the corporate statements of Wyoming Bancorporation in connection with his investigation of this application.

## FINDINGS OF FACT SUPPORTED BY EVIDENCE (ISSUE E)

■ Appellants paraphrase four of the Board's Findings which they contend were not supported by substantial evidence as follows:

2. These four items are from Findings of Fact Nos. 14, 15, 16 and 19 of the Board's Findings of Fact, Conclusions of Law and Order. The

"A. The projected deposits of the applicant were reasonable and indicated promise of successful operation.

"B. The estimates of the applicant as to profit and loss were reasonable and indicated promise of successful operation.

"C. Each of the directors of the proposed bank enjoy a good reputation and character in the community.

"D. First Wyoming Bank–Worland had complied with all the applicable provisions of law in applying for a bank charter." [2]

In *Board of Trustees of School District No. 4, Big Horn County v. Colwell*, Wyo., 611 P.2d 427 (1980), we recently discussed the standard of review in administrative appeals. We there referred to the change in such standard resulting from the May 25, 1979 amendment of former § 9–4–114(c), W.S.1977. We pointed out that the amendment required a review of the "whole record" whereby:

" * * * [W]e do not examine the record only to determine if there is substantial evidence to support the Board's decision, but we must also examine the conflicting evidence to determine if the Board could reasonably have made its findings and order upon all of the evidence before it. After reviewing the history and rationale in changing the 'substantial evidence' rule in the Wagner Act to the 'whole record' provision of the Federal Administrative Procedure Act (similar to present provisions of § 9–4–114(c)), the consideration is stated in *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951), and quoted in *National Labor Relations Board v. Walton Manufacturing Company*, 369 U.S. 404, 405, 82 S.Ct. 853, 854, 7 L.Ed.2d 829 (1962):

" ' * * * the "reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that deci-

Findings of Fact made by the Board are set out in the next section of this opinion.

sion is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view," it may not "displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*" * * * ' " 611 P.2d at 429.

Applying this standard–one more favorable to an appellant than the former standard–to the evidence in this case, we find sufficient evidence to support the Board's findings. The standard does not mandate a reversal when conflict in evidence is found to exist. We said in *Board of Trustees of School District No. 4, Big Horn County v. Colwell,* supra:

"For the purpose of reviewing the propriety of the district court's action, we will review the agency action as though the appeal were directly to this court from the agency. We are governed by the same rules of review as was the district court. [Citations.]

"Therefore, we will not substitute our judgment for that of the agency. [Citations.] Appellee has the burden of establishing the insufficiency of the evidence to sustain the Board's decision. [Citation.] In making the determination as to whether or not the agency findings and conclusions are supported by substantial evidence as required by § 9–4–114(c)(ii)(E), W.S.1977, 1979 Cum.Supp., we set forth the following standard in *Howard v. Lindmier,* 67 Wyo. 78, 214 P.2d 737, 739, 740 (1950), as quoted in *Board of Trustees, Laramie County School District No. 1 v. Spiegel,* supra, [Wyo.], 549 P.2d at 1177, 1178:

" ' " . . . Even if the court comes to a different conclusion than that of the Land Board, considering the evidence as a whole, that . . . is in no sense conclusive. The court must go further. It must be able to determine that the Land Board might not reasonably, under the same state of facts,

have come to a different conclusion; . . . *yet the rule adopted and followed by appellate courts here and elsewhere of deferring their opinions as to the weight and credibility of the evidence to that of the trier of the facts in the first instance should be adhered to in land lease cases."* ' [Emphasis in original text]

\* \* \* \* \* \*

" ' " . . . the term 'substantial evidence' does not include the idea of weight of evidence, although it is more than a mere scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . " ' " 611 P.2d at 428.

See *Wyoming Bancorporation v. Bonham,* Wyo., 527 P.2d 432 (1974), supplemented by 563 P.2d 1382 (1977), reh. den. 566 P.2d 219 (1977).

Evidence was presented relative to the past and future growth of Washakie County, the bank deposit growth, the potential customers of the proposed bank, and the general growing economy in the area. The feasibility study evidence was specific as to figures. The findings come to us with a presumption of legality and validity. *Wyoming Bancorporation v. Bonham,* supra; *First National Bank of Thermopolis v. Bonham,* Wyo., 559 P.2d 42 (1977). It cannot be said that a reasonable mind could not reach a conclusion that the projected deposits were attainable and indicated a promise of successful operation as set forth in Finding of Fact No. 14.

The same can be said of appellants' second contention that the estimates of profit and loss were not reasonable. The loss in the first year and the profits in the second and third years as found by the Board [3] and as specified in testimony were findings which a reasonable mind could reach on the basis of the evidence in the whole record.

With reference to the finding that each of the directors of the proposed bank enjoys

---

**3.** See reference in footnote 2.

a good reputation and character in the community, there is nothing in the record to reflect otherwise. Even appellants, in their memorandum brief submitted to the Board in opposition to the charter, state that "their character, as based on the information provided to the Board, is unimpeachable." Nevertheless, appellants contend that the evidence does not establish this character and reputation "in the community" as is recited in the finding of fact. We note that the requirement set forth in § 13–2–212, supra, in this respect is that the board "ascertain to its satisfaction" that the proposed officers and directors "have sufficient experience, ability and standing to afford reasonable promise of successful operation." In addition to the finding of good reputation and character in the community, the Board found that each of the directors "have either had past banking experience or have served as a director for a bank." In the course of his investigation, the State Examiner was charged with the duty of determining "the character and standing *in the community and state* of those proposed as directors * * *" (emphasis supplied).

The word "standing" in the context used in § 13–2–212, supra, is equivalent to "reputation." "Character" is that which a person actually is, and it is usually expressed by qualities which distinguish him from others or which are peculiar to him. "Character" remains with an individual wherever he goes. "Reputation" is that which a person is purported to be or which others think him to be. The "character" of an individual may not properly be reflected in his "reputation," but the accuracy of one's "reputation" is measured by the degree that it corresponds with his "character." *State v. Case*, 247 Iowa 1019, 75 N.W.2d 233 (1956); *Woodruff v. State*, 72 Neb. 815, 101 N.W. 1114 (1904); *Mester v. United States*, D.C. E.D.N.Y., 70 F.Supp. 118 (1947); *Spain v. Rakestraw*, 79 Kan. 758, 101 P. 466 (1909); *Lindsay v. Bates*, 223 Mo. 294, 122 S.W. 682 (1909); *United States v. Schneiderman*, D.C.S.D.Cal., 102 F.Supp. 52 (1951); *Proper v. Mowry*, 90 N.M. 710, 568 P.2d 236 (1977); *Citizens Bank of Nevada v. Robison*, 74 Nev. 91, 323 P.2d 705 (1958).

Accordingly, the "unimpeachable character" of the directors of the proposed bank would follow them to the community. Their reputations resulting from their characters, if accurate, would be good. There is no evidence that their reputations are otherwise. The evidence was sufficient to warrant the determination by the Board "to its satisfaction" that the directors had "sufficient * * * standing to afford reasonable promise of successful operation."

Appellants' contention that there was insufficient evidence to support the Board's finding that all applicable provisions of law were complied with is addressed in other sections of this opinion.

■ With reference to the general nature of the Board's Findings of Fact, we find them to be basic and not ultimate facts, e. g., stating the size of Worland and Washakie County, stating the population of Worland and its service area, stating the nature of the business activity in the area, stating the increase in sales tax, et cetera. The findings in this case have no similarity to the ultimate findings made in *Pan American Petroleum Corporation v. Wyoming Oil and Gas Conservation Commission*, Wyo., 446 P.2d 550 (1968), e. g., " * * * the evidence did not demonstrate present waste in the field * * *; ' * * * the evidence * * * does not, without undue speculation, establish sufficient cause for the granting of an exception to Rule 302 * * *'", et cetera. 446 P.2d at 553.

Therefore, the Findings of Fact in this case are not subject to failure as being ultimate facts.

" * * * It is insufficient for an administrative agency to state only an ultimate fact or conclusion, but each ultimate fact or conclusion must be thoroughly explained in order for a court to determine upon what basis each ultimate fact or conclusion was reached. * * *" *Geraud v. Schrader*, Wyo., 531 P.2d 872, 879 (1975), cert. denied 423 U.S. 904, 96 S.Ct. 205, 46 L.Ed.2d 134 (1975), citing *Pan American Petroleum Corp. v. Wyoming Oil and Gas Conservation Comm'n, supra,*

446 P.2d at 555, and *State Board of Equalization v. Kansas–Nebraska Natural Gas Co.*, Wyo., 457 P.2d 963 (1969).

The Findings of Fact here made were basic and not ultimate.

FACTS SUFFICIENT TO SUPPORT
CONCLUSIONS (ISSUE F)

In its Findings of Fact, Conclusions of Law and Order, the Board set forth eight Conclusions of Law, seven of which were worded substantially as are the seven items mandated by the legislature in § 13–2–212(a), supra, for the Board to ascertain.[4]

■ Appellants contend that facts necessary to support the following three Conclusions of Law were not set forth by the Board:

"1. The public need and convenience of Worland and Washakie County will be promoted by the establishment of the proposed financial institution.

"2. Conditions in Worland and Washakie County afford reasonable promise of successful operation by the proposed bank.

"3. The proposed capital and surplus are not less than the required minimum and the proposed capital structure of $800,000 is adequate in light of current and prospective conditions in Worland and Washakie County."

The Board made the following Findings of Fact:

"1. The Application for authority to organize the First Wyoming Bank–Worland, Worland, Wyoming was properly completed and filed with the Financial Institutions Board in accordance with W.S. 13–2–201 *et seq.*

"2. The primary service area of the First Wyoming Bank–Worland is approximated by the boundaries of Washakie County.

"3. Worland, Wyoming, the location of the proposed bank, is the county seat and the largest town in Washakie County.

"4. Worland, Wyoming serves as an agricultural retail, and commercial service center for a large area in north–central Wyoming. The population of Worland, Wyoming in 1970 was approximately 5,272 and as of January, 1979 was approximately 6,800. The population of the primary service area in 1970 was approximately 7,600, and as of January, 1979 was approximately 9,800.

"5. Development of oil, natural gas, sulphur, gypsum, bentonite and other minerals; raising of sugar beets, alfalfa, small grains, corn, beans, and malt barley; and raising of cattle and sheep all have contributed to the economic and population growth of the Worland trade area.

"6. Sales and use tax collections in Washakie County, Wyoming have increased 95.8% from 1972 to 1977.

"7. Per capita personal income in Washakie County has increased 76.3% from 1970 to 1976.

"8. Residential and commercial construction in Worland, Wyoming has expanded since 1970.

"9. Total taxable valuation from Worland and Washakie County, Wyoming has increased over 60% from 1970 to 1978.

"10. The commercial bank deposits of the two existing banks in Worland increased 177.3% from 1970 to 1977.

"11. The location of the First Wyoming Bank, Worland on Seventh Street between Big Horn Avenue and Robertson Avenue is a central location in close proximity to most of the retail and service facilities of Worland.

"12. The incorporators on behalf of the First Wyoming Bank, have indicated that the bank will not exercise any powers deemed inconsistent with the laws of the State of Wyoming.

"13. The proposed capital and surplus of the First Wyoming Bank, Worland is $800,000. This amount is not less than the minimum required by W.S. 13–2–301 and is adequate to sustain an adequate capital structure and provides a reasonable assurance against risk at the start in light of current and prospective conditions in the primary service area.

---

**4.** The eighth Conclusion was that the application should be granted.

"14. The projected deposits of $2.6 million dollars at the end of the first year of operation, $4.1 million at the end of the second year, and $5.8 million at the end of the third year made by the Applicant are reasonable and indicate promise of successful operation.

"15. The estimate of the Applicant that the First Wyoming Bank, Worland would experience a loss of $41,200 during the first year of operation, a profit before taxes of $31,200 for the second year, and a profit of $57,500 for the third year are reasonable and indicate promise of successful operation.

"16. The First Wyoming Bank, Worland will have a Board of Directors consisting of five members all of whom will be the incorporators of the bank. All directors have stated that they will serve on the Board of Directors for the first year. Each of the directors enjoys a good reputation and character in the community. Each of the directors have either had past banking experience or have served as a director for a bank.

"17. The principal officer of the First Wyoming Bank enjoys a good reputation and is considered to be capable and responsible as a banker. He will devote 100% of his time to the bank. He has experience in banking operations from 1957 to the present.

"18. The name of the Applicant bank is First Wyoming Bank, Worland. This name does not closely resemble the name of any other financial institution transacting business in Washakie County so as to cause confusion.

"19. The First Wyoming Bank, Worland has complied with all applicable provision[s] of the law in applying for a bank charter."

Findings of Fact Nos. 3, 4, 5, 6, 7, 8, 9, 10 and 11 support the first of the Board's Conclusions and the first requirement set forth in § 13–2–212(a), supra, i. e., the public need and convenience will be promoted by the establishment of the proposed financial institution. The appellants seem to consider the principal concern of this re-quirement to be that of avoidance of "overbanking." "Overbanking" may be one aspect of public need and convenience, but the necessity for available service to the community and the extensive growth since the service was furnished (without overbanking) by the two existing banks are other aspects of the requirement. Figures such as an increase in sales and use tax collections of 95.8% in five years, and increase in total taxable valuation of 60% in eight years, an increase of commercial bank deposits of 177.3% in seven years, beget no apology for a conclusion that all aspects of public need and convenience are present.

Findings of Fact Nos. 3, 4, 5, 6, 7, 8, 9, 10, 11, 14 and 15 support the second of the Board's conclusions and the second requirement set forth in § 13–2–212(a), supra, i. e., conditions in the community in which the proposed financial institution would transact business afford reasonable promise of successful operation. This requirement is closely related to the first requirement and is supported by the same Findings and by additional Findings 14 and 15.

Findings of Fact Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, 13, 14 and 15 support the third of the Board's conclusions and the fourth requirement set forth in § 13–2–212(a), supra, i. e., the proposed capital and surplus are not less than the required minimum and that the proposed capital structure of $800,000 is adequate in light of current and prospective conditions in Worland and Washakie County.

The Findings of Fact are sufficient to support the conclusions reached by the Board. The Board cannot be said to have abused its "discretion" in this in ascertaining the same "to its satisfaction" as required by § 13–2–212(a), supra.

### ARBITRARY, CAPRICIOUS AND CHARACTERIZED BY ABUSE OF DISCRETION (ISSUE G)

The appellants again attack the Board's determinations that a public need would be served by the proposed bank and that the conditions in the area afforded reasonable promise of successful operation by the pro-

posed bank by contending that such determinations were arbitrary, capricious and an abuse of discretion.

■ The public need is not measured by the present existence of adequate banking services or accommodations, but it is measured by the potential for profitable operation of an additional bank without endangering the existence of the present banks. The requirement of public need is not to deter competition or foster monopoly, but to guard the public against imprudent banking. *State ex rel. Dybdal v. State Securities Commission*, 145 Minn. 221, 176 N.W. 759 (1920); *Farmers State Bank, LaGrange v. Department of Financial Institutions*, Ind., 355 N.E.2d 277 (1976); *State ex rel. Banking Commission v. Avery County Bank*, 14 N.C.App. 283, 188 S.E.2d 9 (1972); *Suburban Bank of Kansas City v. Jackson County State Bank*, Mo., 330 S.W.2d 183 (1959); *Department of Financial Institutions v. Wayne Bank and Trust Company*, Ind., 381 N.E.2d 1100 (1978).

■ As already noted, supra, there was here evidence to support the Board's determination that the proposed bank would be a profitable operation. The evidence further reflected a healthy growth of the existing banks and that they were at loaning capacity.

"The term 'arbitrary' has been variously defined, but in general is defined as willful and unreasoning action, without consideration and regard for the facts and circumstances presented, and without adequate determining principle. * * *

" ' * * * When there is evidence in the record, however, and

" ' ' "Where there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached. * * * " ' "
*In re West Laramie*, Wyo., 457 P.2d 498, 502 (1969).

" 'Arbitrary' and 'capricious' in many respects are synonymous terms. 'Capricious' means freakish, whimsical, fickle, changeable, unsteady, arbitrary. * * "

*Swaney v. Marquette Casualty Company*, La.App., 139 So.2d 74, 76 (1962).

See quotation from *Martinez v. State*, supra, for definition of abuse of discretion.

It cannot be said that the Board's action was without reasoned consideration and without regard for the facts and circumstances presented and without adequate determining principle. The Board could reasonably conclude as it did.

## COMPLIANCE WITH LAW (ISSUE H)

■ Appellants' contention of error in this respect is that Wyoming Bancorporation has not complied with 12 U.S.C. § 1841(a) (part of the Bank Holding Company Act) which makes it unlawful for a bank holding company to take any action that causes a bank to become a subsidiary of it without approval of the appropriate federal regulatory agencies. Therefore, the contention is that § 13–2–212(a)(vii), supra, which directs compliance "with all applicable provisions of law," has been violated.

Wyoming Bancorporation is not the applicant in this matter. It is true that it proposes to purchase most of the stock of the proposed bank. It must have the permission of the Federal Reserve Board to do so. The Board does not have an obligation to determine if there has been compliance with the Bank Holding Company Act. *Banking Board v. Columbine State Bank*, 194 Colo. 54, 569 P.2d 871 (1977).

Additionally, the Board's ruling conditions the proposed bank's affiliation with Wyoming Bancorporation upon approval of the Federal Reserve Board of the purchase of the bank's stock by Wyoming Bancorporation.

Appellants' contention in this respect is not pertinent to the propriety of the action taken by the Board. (See next section.)

## IMPROPER DELEGATION OF LEGISLATIVE AUTHORITY (ISSUE I)

■ Appellants argue that inasmuch as the Board granted the charter for the proposed bank "subject to approval of the Fed-

eral Reserve Board for acquisition of" the proposed bank by Wyoming Bancorporation, and inasmuch as federal law requires the Federal Reserve Board, before giving such approval, to take into consideration the financial and managerial resources and future prospects of the holding company and the convenience and needs of the community to be served, the Board is redelegating to the Federal Reserve Board its duty and authority to determine the needs and convenience of the community.

The Board recognized the holding company structure as bearing upon the potential soundness of the proposed bank. The condition is just that, i. e., a condition, and is not a delegation of authority. Neither the Board's actions nor those of the Federal Reserve Board are invalid merely because they duplicate each other with reference to powers to determine the basic qualifications of a proposed bank.

"In their application, the petitioners have stated their intent to request approval of the Federal Reserve System pursuant to 12 U.S.C. § 1842(a) for Bankshares to acquire the stock of the proposed bank. The banking board is not required as a part of its *pre–chartering* duties to determine that the petitioners have obtained federal approval. *Academy Boulevard Bank v. Banking Board*, supra [30 Colo. App. 331, 492 P.2d 76]; see also *Goldy v. Crane*, 167 Colo. 44, 445 P.2d 212 (1968). State law does not prohibit a bank holding company from acquiring stock in a state bank. Acquisition of an existing bank by a bank holding company is *exclusively* within the jurisdiction of the Federal Reserve Board." (Emphasis not supplied.) *Banking Board v. Columbine State Bank*, supra, 569 P.2d at 874. See *Whitney National Bank in Jefferson Parish v. Bank of New Orleans and Trust Company*, 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965).

The authority of the Board is complementary to that of the Federal Reserve Board, but it is not in conflict therewith. *Wyoming Bancorporation v. Bonham*, supra; *Board of Governors of Federal Reserve System v. First Lincolnwood Corporation*, 439 U.S. 234, 99 S.Ct. 505, 58 L.Ed.2d 484 (1978). Thus, there is no redelegation of authority in the action here taken by the Board.

Inasmuch as we do not find merit in appellants' contentions of error, the order of the district court affirming the decision of the Board is affirmed.

McCLINTOCK, Justice, dissenting.

I cannot agree that the board's findings of fact were sufficient to support its conclusion that "[t]he public need and convenience of Worland and Washakie County will be promoted by the establishment of the proposed financial institution.", I also believe that financial and biographical information pertinent to Wyoming Bancorporation, admittedly the real party in interest in the application for charter, should have been filed with the bank examiner and made available to protesting financial institutions.

The majority today hold that the board's findings are sufficient to support its conclusion that the proposed bank will promote the public need and convenience of the community but merely state:

" * * * The appellants seem to consider the principal concern of this requirement [1] to be that of avoidance of 'overbanking.' 'Overbanking' may be one aspect of public need and convenience, but the necessity for the available service to the community and the extensive growth since the service was furnished (without overbanking) by the two existing banks are other aspects of the requirement. Figures such as an increase in sales and use tax collections of 95.8% in five years,

1. Section 13–2–211(a), W.S.1977 requires the bank examiner to

" . . . make a careful investigation and examination of . . .

"(iv) The need in the community where the institution would be located giving particular

consideration to the adequacy of existing financial facilities and the effect that the proposed institution would have upon existing financial institutions in the community."

an increase in total taxable valuation of 60% in eight years, an increase of commercial bank deposits of 177.3% in seven years, beget no apology for a conclusion that all aspects of public need and convenience are present."

Our present statute (see n. 1) represents a slight but I think very important enlargement of the duties imposed on the bank examiner under § 13–44 W.S.1957, to which I referred in my dissent in *Wyoming Bancorporation v. Bonham*, Wyo., 527 P.2d 432 (1974). That statute required the examiner "to inquire . . . into the convenience and needs of the community to be served. . . ." I observed in the dissent that I had no doubt "that the danger of overbanking is what the legislature sought to protect against." 527 P.2d at 442. Under the present statute the examiner must give consideration not only to the adequacy of the existing facilities but he must examine what effect the new institution would have upon existing institutions. While it is the financial board that must now make the decision whether to grant the charter, § 13–2–212 permits the board to approve the charter only if among other things it is satisfied that "[t]he public need and convenience will be promoted by the establishment" of the new bank. It must consider and pass judgment on the same factors that had to be investigated by the examiner.

It is not my intent to say that Worland does not need another bank. That question is not for this court or for me. Our only purpose is objectively to review the record and determine whether the board has made such a determination and whether that determination is legally supported by the facts. My point is that the examiner and the board have not properly performed the duty imposed upon them by the legislature to make a full inquiry. My concern with overbanking was expressed in Wyoming

Bancorporation, and I shall not plow old ground [2], but I am concerned that the board and this court carry into effect the legislative mandates. Our first task is to " 'examine the statute in question for the purpose of ascertaining what the legislature intended by its enactment.' " *State ex rel. Albany County Weed and Pest District v. Board of County Commissioners of County of Albany*, Wyo., 592 P.2d 1154, 1157 (1979), quoting from *Johnson v. Safeway Stores, Inc.*, Wyo., 568 P.2d 908, 911 (1977). To do that,

". . . we must look to the mischief the statute was intended to cure, the historical setting surrounding its enactment, the public policy of the state, the conclusions of the law and all other prior and contemporaneous facts and circumstances." *Basin Electric Power Cooperative v. State Board of Control*, Wyo., 578 P.2d 557, 563 (1978).

I adhere to the conviction I expressed in Wyoming Bancorporation that the legislature was seeking to protect the community against overbanking. 527 P.2d at 442. The law was passed during the latter part of the Great Depression at a time when the principal legislative concern was the protection of the public from bank failures. The concern was a legitimate one because it has been estimated that five thousand banks collapsed between 1929 and 1933, *Central Bank of Clayton v. State Banking Board of Missouri*, Mo.App., 509 S.W.2d 175, 183 (1974), and those concerned with the banking business were of the general view that "bank failures were the result of excessive competition among banks and imprudent banking practices." Id., 509 S.W.2d at 183. And as was said in that case, quoting from an earlier decision, the purpose of applying the concept of need and convenience "is not to prevent new banks from entering the field, but rather to insure the existence of a

---

**2.** In addition to decisions cited in my dissent in *Wyoming Bancorporation v. Bonham*, Wyo., 527 P.2d 432, 443 et seq. (1974), the question of need has received court attention in *Central Bank of Clayton v. State Banking Board of Missouri*, Mo.App., 509 S.W.2d 175 (1974) and *Jackson v. Valley National Bank of Eagan*

*Township*, 277 Minn. 293, 152 N.W.2d 472 (1967). The Minnesota court lists 12 factors which should be considered by the licensing authorities. I would say that most of these factors have been ignored by the examiner and board in this case.

healthy banking system." *Suburban Bank of Kansas City v. Jackson County State Bank*, Mo.App., 330 S.W.2d 183, 187 (1959).

I do not find where either the examiner or the board fulfilled their duty to inquire into the need of the community, the adequacy of existing financial institutions and the effect of the proposed bank on existing financial institutions. For example, the board failed to discuss the importance of the two savings and loan associations and various credit unions located in Worland. It did not discuss the impact this new bank would have on those institutions. Nor has the board made any findings as to the effect upon the banking community of a new state bank at Thermopolis, some 35 miles from Worland, or a state bank in Basin some 60 miles away.[3] The findings also fail to show that the services of the existing financial institutions are not capable of handling any potential growth in the community, or what kind of services will be offered by the proposed bank. Because of these omissions I am of the opinion that the findings of fact are inadequate to support the conclusion reached by the board. Our court does not fill this void by merely citing figures showing financial growth in the community. The question is not whether the community is prosperous but whether it needs another bank.

*Financial Report—Wyoming Bancorporation*

Appellant's objection in this court as to the lack of information relating to Wyoming Bancorporation, the company which admittedly was immediately going to acquire the stock of the new bank once the charter was granted, has been rejected by the majority. The majority have found that there was no need for Wyoming Ban-

corporation to file financial reports with the state examiner. I disagree.

Financial and biographical information concerning Wyoming Bancorporation was pertinent, since that corporation is admittedly the real organizer of the new bank. If the nominal organizers of the bank are not to continue its management and control, information as to their "character, financial standing and ability" are of little assistance to the board in determining whether the charter should issue. Information concerning this corporation is more pertinent to the problem facing the financial board.

Whenever it appears that a corporation for all practical purposes is the real organizer of a new bank, financial and bibliographical information concerning the corporation should be made available and the financial board should take this information into consideration for issuing a bank charter. While the majority have held that failure to file such information did not violate the board's rules, I am of the opinion that even though such information was not specifically required by § 13–2–207, W.S.1977 nor by the board's rules and regulations, such information was pertinent and therefore should have been filed and considered.

For the foregoing reasons I would reverse the judgment of the district court and remand the matter to the board for further investigation of the questions indicated.

---

**3.** In *First National Bank of Thermopolis v. Bonham*, Wyo., 559 P.2d 42, 45 (1977), we find this reference to the findings of the examiner in connection with his investigation of the question whether to issue a charter to the First State Bank of Thermopolis: " 'A substantial volume of business and individual demand deposits are now leaving the community by way of deposit accounts placed with banks located in other communities.' " This would indicate to me that Thermopolis and Worland may be considered as a part of the same banking community.